**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

SAMUEL CABASSA,

                                **Plaintiff,**

     vs.                                                     9:11-CV-01237
                                                                     (MAD/CFH)

**CHRISTINA OSHIER, Clerk II, Individually
and official capacity; DALE A. ARTUS, Supt.
Clinton C.F. Individually and official capacity;
THOMAS L. LaVALLEY, Supt. Clinton C.F.
Individually and official capacity; NEW YORK
STATE DEPARTMENT OF CORRECTIONAL
SERVICES; E. BLAISE, Registered Nurse, Individually
and official capacity; S. MILLER, Nurse Practitioner,
Individually and official capacity; MARK MAXON,
Optometrist, Individually and official capacity;
OFFICER JENNETT, Correctional Officer, Individually
and official capacity; OFFICER EZRO, Correctional
Officer, Individually and official capacity; JOHN
MILBURN, Correctional Officer, Individually and
official capacity; MAX PATNODE, Deputy
Superintendent for Programs, Individually and official
capacity; B. LECUYER, Nurse Administrator,
Individually and official capacity; NURSE BADGER,
Registered Nurse, Individually and official capacity;
KANG MAENG LEE, Medical Doctor, Individually and
official capacity; VONDA JOHNSON, Medical Doctor,
Individually and official capacity; JOHN A. DOE,
Correctional Sergeant, Individually and official capacity;
JOHN B. DOE, Correctional Officer, Individually and
official capacity; JOHN C. DOE, Correctional Officer,
Individually and official capacity; JOHN D. DOE,
Correctional Officer, Individually and official capacity;
JOHN E. DOE, Correctional Officer, Individually and
official capacity; JOHN F. DOE, Correctional Officer,
Individually and official capacity; JOHN G. DOE, DOCS
Utilization Review Committee, Individually and official
capacity; JOHN H. DOE, DOCS Utilization Review
Committee, Individually and official capacity,**

                                  **Defendants.**
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|

SAMUEL CABASSA
84-A-0364
Wende Correctional Facility
P.O. Box 1187
Alden, New York 14004
Plaintiff *pro se*

OFFICE OF THE NEW YORK  GREGORY J. RODRIGUEZ, AAG
STATE ATTORNEY GENERAL
The Capitol
Albany, New York 12224
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff *pro se* Samuel Cabassa ("Cabassa"), commenced the present action pursuant to 42 U.S.C. § 1983, alleging that he was denied adequate care and accommodations, in violation of his Eighth and First Amendment rights, when Defendants failed to provide him with appropriate treatment concerning his partial blindness and other visual impairments. *See* Dkt. No. 1. Plaintiff's allegations span an approximate two-year period, from October 2008 to late December 2010, and comprise of claims against multiple Defendants including, the New York State Department of Corrections and Community Supervision ("DOCCS"), fourteen DOCCS employees, and eight John Does. *See id.* Additionally, Plaintiff asserts claims pursuant to 42 U.S.C. § 12132, the Americans with Disabilities Act ("ADA"), and 42 U.S.C. § 794, the Rehabilitations Act ("RA"). *See id.* at 52-56. Primarily, Plaintiff seeks compensatory and punitive damages for the alleged violations.

In a Report-Recommendation and Order dated October 30, 2012, Magistrate Judge Hummel recommended that the Court grant in part and deny in part Defendant's motion to dismiss

certain Defendants and claims pursuant to Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 49. Currently before the Court are Plaintiff's and Defendants' objections to the Report-Recommendation and Order.

## II. BACKGROUND

Plaintiff is an inmate currently in the custody of Defendant DOCCS, housed at the Wende Correctional Facility ("Wende C.F."). At all times relevant, however, Plaintiff was confined at the Clinton Correctional Facility ("Clinton C.F."). Plaintiff suffers from blindness in his left eye and visual impairments in his right eye, and requires a contact lens and non-prescription glasses with a grey gradient tint to control his photophobia, a sensitivity to bright natural or artificial lighting. *See* Dkt. No. 1 at ¶ 6(2); *see also* Dkt. No. 47-2 at 2. Clinton C.F. policy requires a prisoner to obtain a medical permit in order to wear any eyeglasses or equipment in the facility. *See id.* at ¶¶ 6(3), (5). Without the proper eye protection, Plaintiff claims to suffer from intolerable pain and frequent migraine headaches. *See id.* at ¶ 6(6).

Upon being transferred to Clinton C.F. on October 9, 2008, Plaintiff met with Defendants Blaise, a nurse, and Oshier, a clerk, to explain his eye condition and his need for the special visual accommodations. *See id.* at ¶ 6(3). Despite explanation of his impairment and light sensitivity, Plaintiff contends that Defendants Blaise and Oshier accused him of lying and refused to issue him the requisite permit or any accommodations. *See id.* at ¶¶ 6(4), (7). Shortly thereafter, Plaintiff contends that Defendant Ezero, a correctional officer, threatened to retaliate against him for voicing his intent to file a grievance against her. *See id.* at ¶¶ 6(10)-(12). After the alleged denial and threat, Plaintiff sent a letter of complaint to the superintendent, Defendant Artus, who

3

subsequently referred the letter to Defendant LaValley, another superintendent at Clinton C.F. *See id.* at ¶ 6(12).

On October 12, 2008, Plaintiff informed the nursing staff that he would be unable to pick up his nightly medication because of the irritation to his eyes and migraine headaches that would be caused by the bright lights on his walk through the facility. *See id.* at ¶ 6(13). A nurse provided Plaintiff with a refusal form where he noted this reason and also requested delivery of the medication to his cell. *See id.* at ¶¶6(14)-(15). At this time, one of the nurses — Defendant Miller — denied Plaintiff's request and discontinued his nighttime medication. *See id.* at ¶ 6(16).

Thereafter, Plaintiff used two methods to inform staff at Clinton C.F. of his grievances related to their failure to provide him with adequate accommodations for his visual disability. *See id.* at ¶¶ 6(17)-(19). On October 20, 2008, Plaintiff sent a letter to Defendant Johnson, a medical doctor. *See id.* at ¶¶ 6(17)-(18). Plaintiff's letter included a complaint with regard to Defendants Oshier and Blaise's denial of his medically necessary glasses, his resulting exposure to risk of danger and pain, and requested the following relief: (1) a temporary permit to wear glasses; (2) delivery of his nightly medication to his cell; and (3) reasonable accommodations for showering to avoid extreme pain to his hips, knees, and back. *See id.* On October 21, 2008, Plaintiff also informed Defendant Miller of Defendants Blaise and Oshier's refusal. *See id.* at ¶ 6(19). Plaintiff provided Defendant Miller with substantiation of his medical need for visual assistive devices, including medical records and permits provided to him in the past from other prisons. *See id.* At this time, Defendant Miller addressed Plaintiff's other concerns. *See id.* at ¶¶ 6(17)-(20).

First, Defendant Miller instructed Defendant Oshier to issue Plaintiff a pair of solar shield sunglasses to address his photophobia. *See id.* at ¶¶ 6(22)-(23). Plaintiff described the glasses as "a huge pair of 100% black sunglasses" that impaired his vision and led to several accidents and

injuries with both objects and other inmates. *See id.* at ¶ 6(49). Plaintiff supports this contention with declarations from three other inmates observing such incidents. *See* Dkt. No. 47-6 at 68, 72-73. Next, Defendant Miller notified an officer and the nursing staff that Plaintiff had feed-in-cell status and would require delivery of his nighttime medication to his cell. *See* Dkt. No. 1 at ¶¶ 6(23)-(24). Finally, after hearing Plaintiff's complaints regarding his difficulty traversing the shower stair case and slippery shower floors, the alleged risk to his physical mobility, and his susceptibility to inmate quarrels given the layout of the showers, Defendant Miller determined that Plaintiff's concerns warranted a medical shower designation. *See id.* at ¶¶ 6(25)-(28); *see also* Dkt. No. 47-6 at 75. Several days later, on October 31, 2008, Plaintiff sent Defendant Miller a letter requesting an exemption from heavy lifting because of the resulting pain and damage to his shoulder, back, hips, and knees; no response was received. *See* Dkt. No. 1 at ¶ 6(29).

On November 19, 2008, Plaintiff was transferred to C-block and provided one of the correctional officers, Defendant Jennette, his feed-in-cell and glasses permits. *See id.* at ¶ 6(41). Jennette allegedly refused to honor the permits — citing lack of authority of the permit issuers — and sent Plaintiff to the infirmary after Plaintiff skipped breakfast the following morning. *See id.* at ¶¶ 6(42)-(43). Plaintiff explained the incident to Defendant Blaise, who then received permission from Defendant Miller to re-issue another thirty day feed-in-cell status permit. *See id.* at ¶ 6(44). Despite issuance of a new permit, Plaintiff contends that Defendant Jennette refused to honor his feed-in-cell status. *See id.* at ¶ 6(46). On November 24, 2008, Plaintiff sent a letter to Defendant Miller describing Defendant Jennette's conduct and the involuntary hunger strike that was occurring as a result, as well as reiterating his previous complaints and requests — to receive delivery of his nightly medication and feed-in-cell status. *See id.* In the days following, Plaintiff was affirmatively denied these requests.

On November 25, 2008, Plaintiff consulted Defendant LaValley about a grievance previously filed against Defendant Maxon, an optometrist. *See id.* at ¶ 6(47). During this interaction, Defendant LaValley ordered Plaintiff to remove his tinted glasses despite being supplied medical records and shown a comparison of his tinted glasses with the substantially darker, and allegedly harm inducing, glasses provided by Defendant Oshier. *See id.* at ¶¶ 6(47)-(49). At this time, Defendant LaValley declined Plaintiff's request to wear his personal tinted glasses and confirmed the rescission of his feed-in-cell status by Defendant Jennette. *See id.* at ¶¶ 6(49)-(50). The following day, Defendant Badger, another nurse at the facility, informed Plaintiff that his nightly medication was terminated. *See id.* at ¶ 6(51). Later that day, Plaintiff received a letter from the nursing staff explaining that his feed-in-cell status was terminated because no medical restrictions precluded him from walking to the cafeteria. *See id.* at ¶ 6(53).

Thereafter, on December 1, 2008, Plaintiff sent a letter to the DOCCS Commissioner complaining that Defendants Maxon, Blaise, Oshier, Jennette, Artus, and LaValley intentionally subjected him to an involuntary hunger strike when they failed to comply with his feed-in-cell permit and subsequently terminated such status. *See id.* at ¶ 6(53). The next day, Plaintiff sent Defendant Artus a copy of his December 1 complaint, his complaint against Defendants Maxon and Oshier alleging retaliation for filing grievances, as well as a copy of the grievance he filed earlier that day alleging that: (1) Defendants Artus and LaValley were aware of, and condoned, discriminatory acts against Plaintiff's visual impairment; (2) Defendant Jennette refused to honor his feed-in-cell permit and compelled the medical staff to rescind the permit; and (3) the failure to follow the feed-in-cell permit was effectively subjecting Plaintiff to an involuntary hunger strike. *See id.* at ¶¶ 6(40), (66).

6

On December 12, 2008, Plaintiff alleges that Defendant Milburn, a correctional officer, and six unnamed officers — John Does A through F — physically assaulted him in front of D-Block, which resulted in "brutalization and humiliation" to Plaintiff. *See id.* at ¶¶ 6(68)-(74). On December 31, 2008, Defendant Maxon, the optometrist, met with Plaintiff and, per his instructions, denied Plaintiff permission to use his personal tinted sunglasses or permanent tinted lenses. *See id.* at ¶ 6(81). Defendant Maxon informed Plaintiff that he was authorized to prescribe transitional lenses. *See id.* When Plaintiff expressed his concern over the migraine headaches and pain caused by transitional glasses, Defendant Maxon responded that these were his instructions. *See id.* at ¶ 6(82).

Plaintiff saw Defendant Miller again on March 3, 2009, and at this time, complained of severe pain in his shoulder, hips, and back caused by the December 12, 2008 assault. *See id.* at ¶ 6(83). During this encounter, Plaintiff begged for his nighttime pain medication — promising to walk to the infirmary to pick it up — and was told by Defendant Miller that he should be receiving state-issued glasses within two weeks. *See id.* at ¶¶ 6(83)-(84). On the night of April 30, 2009, when Plaintiff picked up his medication, he complained to Defendant Badger of immense pain caused by the bright lights in the mess-hall and again requested delivery of the medicine to his cell at night. *See id.* at ¶ 6(86). Contrary to this encounter alleged by Plaintiff, Defendant Miller's entry on May 1, 2009, in his Ambulatory Health Records ("AHR"), indicated that Plaintiff had refused his nighttime Tylenol-3 and prescribed a discontinuation of both day and night Tylenol-3. *See id.* at ¶ 6(87). Almost two months later, when Plaintiff asked Defendant Miller why both medications had been stopped, Defendant Miller responded that Defendant Badger had refused to have the nursing staff perform the deliveries. *See id.*

7

On August 28, 2009, an orthopedist recommended that Plaintiff receive cortisone injections to combat his knee pain. Defendant Miller, however, disregarded this advice after review on September 17, 2009. *See id.* at ¶ 6(90). A retinal specialist, Dr. Gigante, consulted Plaintiff on September 14, 2009. *See id.* at ¶ 6(92). During this appointment Dr. Gigante discovered a cataract growth on Plaintiff's right eye and named this as the likely source of his migraine headaches, eye irritation, and pain. *See id.* at ¶ 6(92). Dr. Gigante recommended Plaintiff use tinted glasses to reduce glare and irritation and suggested that Plaintiff not yet receive the high-risk corrective surgery. *See id.* at ¶ 6(93). A few months later, at a follow up appointment on December 14, 2009, Plaintiff was informed that the growth had increased in size. *See id.* at ¶ 6(95). At this time Dr. Gigante, (1) opined that surgery was likely necessary despite its high risks; (2) recommended Plaintiff's transfer to a sensorially disabled facility; and (3) prescribed that Plaintiff should receive a new contact lens and pair of glasses with gradient grey tints. *See id.* Plaintiff alleges that Defendant Maxon agreed that he needed to be transferred to a sensorially disabled facility when asked on January 11, 2010, but refused to carry out the order to commence the transfer process. *See id.* at ¶¶ 6(101)-(103). Almost six months after the growth was initially found, at a third consultation with Dr. Gigante on April 12, 2010, Dr. Gigante opined that Plaintiff required surgery because his vision was deteriorating rapidly. *See id.* at ¶ 6(96).

The following month, on May 12, 2010, Plaintiff's counselor at the facility told him to complete and submit a Request for Reasonable Accommodations to Defendant Patnode, the Deputy Superintendent for Programs. *See id.* at ¶ 6(96). Although the primary purpose of filing the form was to obtain transfer to a sensorially disabled facility, Plaintiff also used this form to reiterate his requests for gradient tinted glasses, a contact lens, and medical and feed-in-cell permits. *See id.* at ¶¶ 6(97)-(99). The next month, Plaintiff met with a cornea specialist, who

8

once again recommended that Plaintiff receive permanent gradient tinted glasses and a new contact lens while awaiting the cataract-removal surgery. *See id.* at *¶* 6(100).

In Mid-July, Defendant Johnson issued Plaintiff the requested medical, shower and feed-in-cell permits. *See id.* at ¶ 6(104). The following month, on August 27, 2010, Plaintiff wrote a complaint to Defendant Johnson about Defendant Lee, a medical doctor, whom he contends refused to provide him with his pain medication. *See id.* at ¶ 6(105). Plaintiff filed two more complaints with Defendant Johnson against Defendant Lee for failing to comply with his medical recommendations on December 20th and 29th after Plaintiff's second consultation with the orthopedist on September 10, where he was administered cortisone injections and prescribed additional medications. *See id.* at ¶¶ 6(106), (109).

On October 28, 2010, Plaintiff requested expedited transfer to a sensorially disabled facility in letters to both LeClair, the deputy commissioner of correctional facility operations, and Carver-Jordan, the director of classification and movement. *See id.* at ¶ 6(107). Although this request was denied the following day, on December 3, 2010, Plaintiff was transferred to Wende C.F.'s Sensorially Disabled Program, where he was also provided with tinted glasses in late March of 2011. *See id.* at ¶¶ 6(108), (111).

### III. DISCUSSION

In their motion to dismiss, Defendants contend the following: (1) Plaintiff's section 1983 claims are barred under the applicable statute of limitations; (2) the Eleventh Amendment bars Plaintiff's section 1983 claims against Defendant DOCCS and the Defendants in their official capacities; (3) Plaintiff failed to allege the personal involvement of Defendants Artus, LaValley, Ezero, Patnode, Lecuyer, and Miller for as to the section 1983 claims; (4) the Eleventh

Amendment bars Plaintiff's ADA and RA claims against individual Defendants in their official capacities as redundant to Plaintiff's claims against DOCCS; (5) Plaintiff failed to state an access to the courts claim under the First Amendment. *See* Dkt. No. 34-1 at 2.

In his objections to Judge Magistrate's Report-Recommendation and Order, Plaintiff requests that the Court deny Defendants' motion to dismiss in its entirety. Plaintiff directly objects to the Report-Recommendation and Order insofar as it recommends the dismissal of the claim against Defendant Patnode. *See* Dkt. No. 51 at 2. Specifically, Plaintiff alleges facts to show Defendant Patnode's personal involvement and "constructive role," including his: (1) review and response to an October 23, 2009 grievance (#CL-59504-09) filed by Plaintiff; (2) approval for modified accommodations in the form of requesting the Central Office to consider transferring Plaintiff to a sensorially disabled facility; (3) involvement in instructing Counselor Casper that he had approved the modified accommodations for Plaintiff, particularly the transfer; (4) alleged awareness about Plaintiff's hardships incurred bathing in his cell; (5) forwarding an interdepartmental communication to Plaintiff; and (6) review and denial of Plaintiff's grievance (#CL-59986-10) filed June 7, 2010, despite being an interested party in the grievance. *See id.* at 2-6.

**A.    Standard of review on a motion to dismiss**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493

F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed[,]" *id.* at 570.

"The *Iqbal* plausibility standard applies in conjunction with employment discrimination pleading standards." *Gillman v. Inner City Broad. Corp.*, No. 08 Civ. 8909, 2009 WL 3003244, \*3 (S.D.N.Y. Sept. 18, 2009). Employment discrimination claims need not contain specific facts

11

establishing a *prima facie* case of discrimination, *see Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514-15 (2002); rather, an employment discrimination complaint "must include only a short and plain statement of the claim . . . [that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *id.* at 512 (quotation marks and citations omitted); *see also Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (applying *Swierkiewicz* to NYSHRL discrimination claims).

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 127 (2007). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests." *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002).

**B.     Review of a magistrate judge's report-recommendation**

When a party files specific objections to a magistrate judge's report-recommendation, the district court makes a "*de novo* determination of those portions of the report of specified proposed findings or recommendations to which objection in made." 28 U.S.C. § 636(b)(1) (2006). However, when a party files "[g]eneral or conclusory objection or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**C.     Statute of Limitations**

Defendants move to dismiss Plaintiff's claims arising pursuant to section 1983 as barred under the applicable statute of limitations. *See* Dkt. No. 34-1 at 2. Although section 1983 contains no explicit statute of limitations, New York law is "borrow[ed]," and applies a three year limitation on such claims. *See Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002) (citation omitted); N.Y. C.P.L.R. § 214(5); *see also Romer v. Leary*, 425 F.2d 186, 187 (2d Cir. 1970); *Lugo v. Senkowski*, 114 F. Supp. 2d 111, 113 (N.D.N.Y. 2000). However, Federal law governs the accrual date for these claims and occurs, "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Pearl*, 292 F.3d at 80 (citation omitted). A claim brought pursuant to section 1983 by a prisoner filing *pro se* is deemed filed under the Statute of limitations when it has been delivered to prison officials. *See Tapia-Ortiz v.* Doe, 171 F.3d 150, 152 (2d Cir. 1999).

In the present matter, Plaintiff's claim is not barred by the statute of limitations. As an inmate, filing *pro se*, Plaintiff's claim is considered as filed under the statute of limitations on the date it was delivered to prison officials at Clinton C.F. *See Tapia-Ortiz*, 171 F.3d at 152. Plaintiff delivered his complaint on October 11, 2011. *See* Dkt. No 1-1 at 1. According to the record, the earliest date at which Plaintiff knew or had reason to know of his alleged injury is October 9, 2008, when Defendants Blaise and Oshier refused to issue glasses or a permit for Plaintiff and accused him of lying about his visual impairments. *See id.* at 6(4)-(7). Therefore, applying the three-year Statute of limitations to the accrual date in the present case would bar any claim brought later than October 9, 2011. However, because October 9, 2011 was a Sunday followed by the Columbus day Holiday, application of Rules (3)(A) and 6(A) of the Federal Rules of Civil Procedure pushes the actual statute of limitations date to October 11, 2011. Therefore,

13

Plaintiff has timely filed his section 1983 action in this case as it was filed no later than the date of expiration (October 11, 2011) and Defendants' motion on this ground is denied.

**D.     Eleventh Amendment immunity**

The Eleventh Amendment to the United States Constitution bars federal courts from exercising subject matter jurisdiction over claims against states absent their consent to such a suit or an express statutory waiver of immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 90-100 (1984). Congress did not abrogate the Eleventh Amendment immunity granted to the states when it enacted 42 U.S.C. § 1983 because it is well-settled that states are not "persons" under section 1983. *See Quern v. Jordan*, 440 U.S. 332, 240-41 (1979); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citation omitted). Moreover, because a suit against a state official in his or her official capacity is considered a suit against the entity that employs the official, this immunity extends to state agencies and state officials sued in their official capacities. *See Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988) (citation omitted); s*ee also Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

In the present matter, although Plaintiff has brought claims pursuant to section 1983 against Defendants in both their individual and official capacities, the claims against Defendants in their official capacities are precluded by the Eleventh Amendment. *See* Dkt. No 1-1 at 8. The Second Circuit has held that DOCCS employees are state officials for purposes of section 1983. *See Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002); *Booker v. Rock*, No. 9:11-CV-247, 2012 WL 501629, *2 (N.D.N.Y. Jan. 31, 2012) (citations omitted). In light of this authority, the Court grants Defendants' motion to dismiss as to Plaintiff's official capacity claims.

14

**E.   Personal Involvement**

"It is well settled in [the Second Circuit] that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)).  Therefore, a supervisory official may not be held liable solely on the ground that they held a position of authority. *See Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996) (citation omitted).  However, supervisory personnel may satisfy the personal involvement requirement if:

> (1) The defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Coughlin*, 58 F.3d at 873.

Personal involvement is a question of fact and must be satisfied as to each individual defendant. *See Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986) (citation omitted).  "A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the alleged constitutional deprivation." *Rivera v. Fischer*, 655 F. Supp. 2d 235, 237 (W.D.N.Y. 2009).  Merely writing a letter of complaint does not provide the personal involvement necessary to maintain a section 1983 claim against an individual defendant. *See id.* at 238.  However, if the official "personally look[s] into the matters raised in the letter, or otherwise acts on the prisoner's complaint or request, the official may be found to be personally involved." *Id.* (citing *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997)).  In the present case, Defendants claim that Plaintiff failed to allege the personal

15

involvement of Defendants Artus, LaValley, Ezero, Patnode, Lecuyer, and Miller for his § 1983 claims. See Dkt. No. 34-1 at 2.

### 1. *Defendant Artus*

Magistrate Judge Hummel recommended that the Court find that Plaintiff's verbal complaint to Defendant Artus with respect to his medical concerns and prior assault was sufficient to establish his personal involvement. *See* Dkt. No. 49 at 21 (citing *Harnett v. Barr*, 538 F. Supp. 2d 511, 524 (N.D.N.Y. 2008)). The Court agrees. Although Defendant Artus' failure to respond to letters of complaint or delegate grievances to other officials would be insufficient to establish personal involvement, Plaintiff's allegations that he spoke with Defendant Artus personally regarding an ongoing violation of his rights is sufficient to allege a plausible claim that Defendant Artus was personally involved in the alleged unconstitutional act. *See Harnett*, 538 F. Supp. 2d at 524; *see also* Dkt. No. 46 at ¶ 82.

### 2. *Defendant LaValley*

Plaintiff has pled sufficient facts to allege the personal involvement of Defendant LaValley's deliberate indifference to his medical needs. On November 2008, Plaintiff consulted Defendant LaValley about a grievance previously filed against Defendant Maxon, an optometrist. *See* Dkt. No. 1 at ¶ 6(47). Defendant LaValley also ordered Plaintiff to remove his tinted glasses despite being supplied medical records and declined Plaintiff's request for an eyeglasses permit. *See id.* ¶¶ at 6(47)-(49). Moreover, Defendant LaValley confirmed the rescission of his feed-in-cell status by Defendant Jennette. *See id.* at ¶¶ 6(49)-(50). The Court agrees with Magistrate Judge Hummel's finding that Defendant "LaValley was directly involved in multiple alleged

Eighth Amendment violations" and "clearly participated in investigations into the alleged constitutional violations." *See* Dkt. No. 49 at 22. Accordingly, Defendants' motion on this ground is denied.

### *3. Defendant Patnode*

Magistrate Judge Hummel recommended that the Court find that Plaintiff failed to plausibly allege Defendant Patnode's personal involvement because Plaintiff merely alleged that Defendant Patnode failed to act on letters of complaint Plaintiff submitted to him and because he does not allege that Defendant Patnode personally investigated or acted on the letters. *See* Dkt. No. 49 at 23. If the Court were to rely solely on the complaint, the Court would agree with Magistrate Judge Hummel. In his objections to the Report-Recommendation and Order, however, Plaintiff provides the Court with specific allegations against Defendant Patnode that were not before Magistrate Judge Hummel. Plaintiff's objections provide plausible allegations that Defendant Patnode was personally involved in the alleged unconstitutional conduct. Although the Court will not usually consider allegations not contained in the complaint when deciding a motion to dismiss, in the interests of judicial economy and in light of the special solicitude the Court must show litigants proceeding *pro se*, the Court will consider these allegations in deciding Defendants' motion. *See Johns v. Goord*, No. 9:09-CV-1016, 2010 WL 3907826, *6 (N.D.N.Y. Sept. 30, 2010) (holding that, "[b]ecause plaintiff is proceeding *pro se*, the Court considers the facts and allegations contained in his opposition to defendants' motion and objections in addition to those in the complaint") (citing *Boguslavsky v. Kaplan*, 159 F.3d 715, 719 (2d Cir. 1998)).

In the present case, Plaintiff contends in his objections that Defendant Patnode did not merely act in a ministerial capacity. Plaintiff alleges that, despite being an interested party in the

grievance (#CL-59986-10) filed June 7, 2010, Defendant Patnode reviewed and decided the issue himself, denying Plaintiff's requests. *See* Dkt. No. 51 at 5. Plaintiff also alleges that Defendant Patnode was made aware of his hardships bathing in his cell and his ongoing hardship in receiving accommodations for his visual disability.

Construing these facts in the light most favorable to Plaintiff, the Court rejects Magistrate Judge Hummel's Report-Recommendation and Order insofar as it finds that Plaintiff failed to allege Defendant Patnode's personal involvement; and, therefore, Defendants' motion as to this claim is denied. *See Charles v. N.Y. State DOCS*, No. 07-CV-1274, 2009 WL 890548, *6 (N.D.N.Y. Mar. 31, 2009).

**F.      Plaintiff's ADA and RA claims against Defendants Miller and Johnson**

In their objections to Magistrate Judge Hummel's Report-Recommendation and Order, Defendants argue that the Court should dismiss Plaintiffs' ADA and RA claims against Defendants Miller and Johnson in their official capacities because the State is the real party in interest and Plaintiff has brought this claim against Defendant DOCCS. *See* Dkt. No. 50. Therefore, Defendants argue that Plaintiff's ADA and RA claims against Defendants Miller and Johnson in their official capacities are redundant of his ADA and RA claims against Defendant DOCCS. The Court agrees. *See Hallett v. New York State Dept. of Correctional Servs.*, 109 F. Supp. 2d 190, 199-200 (S.D.N.Y. 2000) (holding that "because plaintiff is able to assert his ADA and Rehabilitation Act claims against DOCS directly, I find that there is no justification for allowing plaintiff to also assert ADA and Rehabilitation Act claims against the individual defendants in their official capacities").

According, the Court grants Defendants' motion to dismiss Plaintiff's ADA and RA claims against Defendant Miller and Johnson in their official capacities as redundant of the claims against Defendant DOCCS.

**G.     Remaining claims**

Having reviewed the remainder of Magistrate Judge Hummel's Report-Recommendation and Order, the Court finds that Magistrate Judge Hummel correctly recommended that the Court should grant Defendants' motion as to the ADA and Rehabilitation Act claims against Defendants Miller and Johnson in their individual capacities. Further, Magistrate Judge Hummel correctly recommended that the Court should deny Defendants' motion as to Plaintiff's (1) Eighth Amendment medical deliberate indifference claims against Defendants Blaise, Oshier, Johnson, Lee, Jennette, and Badger; (2) ADA and RA claims against Defendant DOCCS; and (3) First Amendment denial of access to the courts claim against Defendants Oshier, Miller, Maxon, Johnson, and Lecuyer.

Having found no clear error, the Court adopts Magistrate Judge Hummel's Report-Recommendation and Order as to these claims.

**IV. CONCLUSION**

After carefully considering Magistrate Judge Hummel's Report-Recommendation and Order, Plaintiff's objections thereto, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Hummel's October 30, 2012 Report-Recommendation

and Order is **ADOPTED in part and REJECTED in part** as set forth herein;[1] and the Court further

    **ORDERS** that Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part** as set forth herein; and the Court further

    **ORDERS** that all further pretrial matters are referred to Magistrate Judge Hummel; and the Court further

    **ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: March 21, 2013
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge

---

[1] Magistrate Judge Hummel's Report-Recommendation and Order is rejected insofar as it finds that Plaintiff failed to allege Defendant Patnode's personal involvement and insofar as it recommended not dismissing Plaintiff's ADA and RA claims against Defendants Miller and Johnson in their official capacities, since these claims are redundant of the ADA and RA claims against Defendant DOCCS.